# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| **BEVERLY BASSETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV1422MLM |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue, the Commissioner of Social Security, ("Defendant") denying the applications of Plaintiff Beverly Bassett ("Plaintiff") for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§1381. Plaintiff filed a brief in support of the Complaint. Doc. 17. Defendant filed a brief in support of the Answer. Doc. 20. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 7.

## I.
## PROCEDURAL HISTORY

On August 10, 2006, Plaintiff filed applications for disability benefits and SSI. Tr. 94-101. Plaintiff's applications were denied and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 56-63. After a hearing held on August 26, 2008, the ALJ issued a decision on December 16, 2008, finding that Plaintiff was not disabled. Tr. 6-16. Plaintiff filed a Request for Review with the Appeals Council. Tr. 5. On July 31, 2009, the Appeals Council denied Plaintiff's Request for

Review. Tr. 1-4. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § §416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d

65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because

the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457

F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleged disability due to permanent nerve damage resulting from a broken right wrist. Tr. 139. The ALJ found that Plaintiff had the severe impairments of right carpal tunnel syndrome and residuals of status post right wrist fracture with open reduction and internal fixation; that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment; that Plaintiff could perform the full range of medium work; that Plaintiff could perform her past relevant work as it was not precluded by her RFC; and that, therefore, Plaintiff was not disabled through the date of the decision. Tr. 6-16. Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly consider her RFC; that there

6

was no medical evidence to support the ALJ's determination of Plaintiff's RFC; that the ALJ's "decision relative to Plaintiff's complaints of disabling pain cannot withstand minimal scrutiny"; that Plaintiff's depression was objective evidence supporting Plaintiff's claim that she had disabling pain; that the ALJ failed to develop the record by recontacting Plaintiff's examining and treating physicians for additional information; and that the ALJ failed to "go through with function by function analysis" of Plaintiff's past relevant work and compare it, on a function by function basis, with the RFC which the ALJ assigned to Plaintiff.

**A.     Plaintiff's RFC:**

Plaintiff contends that upon determining Plaintiff's RFC the ALJ failed to consider the standards set forth in Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000) and Lauer v. Apfel, 245 F.3d 700, 745 (8th Cir. 2001). Plaintiff further contends that the ALJ's determination of her RFC is not supported by the medical evidence and that the ALJ should have recontacted her examining and treating doctors to obtain further information.

The ALJ found that Plaintiff can perform the full range of medium work. Medium work is defined by 20 C.F.R. § 404.1567 as follows:

> (c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer, 245 F.3d at 703. "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating

7

physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a"'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh, 222 F.3d at 451). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir.2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir.2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Eichelberger, 390 F.3d at 591.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." Id.

8

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3. As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo, 377 F.3d at 806. "If a claimant establishes [his or] her inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff, 421 F.3d at 790 (citing Eichelberger, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004). At step 5 "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." Goff, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish her RFC." Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737).

First, upon determining Plaintiff's RFC, as required by Lauer, 245 F.3d at 704, and Singh, 222 F.3d at 451, the ALJ considered the medical evidence. In particular, the ALJ considered that Plaintiff was treated in the emergency room in May 2006 for right wrist pain; that x-rays showed fractures; and that, on June 16, 2006, Plaintiff underwent surgery for the fracture without complication. Tr. 11, 175-76, 214-16. The court notes that in a Surgical Specialty Clinic Report, dated July 3, 2006, John C. Carlisle, M.D., of Barnes Jewish Hospital ("BJH"), reported that, on examination, Plaintiff was

9

a "well appearing 51 year-old female"; that her sensation in the right upper extremity was grossly intact to light touch in the median, radial, and ulnar nerve distributions; that Plaintiff had "capillary refill distally and palpable radial pulse"; that Plaintiff had "intact motor function"; that she had limited wrist flexion and extension with extension of approximately 10 degrees and flexion of 25 degrees; that Plaintiff's surgical cast was removed on that date and she was given a short-arm cast; and that Plaintiff was to return in two weeks for removal of the cast. Tr. 201.

The court further notes that, on July 17, 2006, Jason F. Robison, M.D., of BJH, reported that four weeks had passed since Plaintiff's surgery; that she said she had "essentially no discomfort"; that she had "been using her hand to carry groceries and other such things and this has been doing well"; that Plaintiff's cast was removed on this date; that upon the cast's being removed, Plaintiff's distal radius was non tender to palpation, her wrist range of motion was "a little bit limited secondary to stiffness from the cast," and there was no pain; that Plaintiff was neurovascularly intact with intact sensation to light touch; that Plaintiff had brisk capillary refill; that x-rays showed that the volar locking plate was in "excellent position maintaining the anatomical alignment of the distal radius"; that no callous formation was noted; that Plaintiff was healing both clinically and radiographically; that Plaintiff was to be in a splint for the next two weeks, after which she would be weaned from the splint; and that Plaintiff was to return in four weeks. Tr. 199. On August 14, 1006, Dr. Robison reported that Plaintiff's incision was healing well; that she was able to fully extend her index and long fingers with the wrist flexed at approximately thirty degrees and was able to withstand a load applied to these fingers; that Plaintiff's distal radius fracture had clinically healed; that Plaintiff had "resumed a good deal of normal activities"; that Plaintiff "complain[ed] of occasional wrist pain which radiate[ed] up into her arm, but this [was] intermittent at best"; that Plaintiff "describ[ed] some base

10

of thmb [sic] discomfort which [was] intermittent and associated with activity"; that Plaintiff said that "she [was] unable to return to work due to physical demands at her work, and sa[id] that she [was] interested in pursuing disability"; that Plaintiff described "what she call[ed] nerve problems because of an inability to fully extend her index and long fingers"; and that Plaintiff was to have occupational therapy for range of motion and strengthening. Tr. 198. Patricia Kallemeier, M.D., of BJH, who saw Plaintiff on September 11, 2006, for follow-up from her surgery, reported that Plaintiff had one session of occupational therapy; that physical examination showed that Plaintiff's right wrist incision was well healed; that testing showed that Plaintiff had weakness in her right wrist compared to the left; that Plaintiff was "encouraged to continue to work on range of motion"; and that Plaintiff said she had decreased sensation in her thumb and index fingers for the last month, which was worse at nighttime and which correlated with removal of Plaintiff's cast. Tr. 326.

The ALJ further considered that in September 2006 Plaintiff was diagnosed with right carpal tunnel syndrome subsequent to EMG/nerve conduction studies and that on December 8, 2006, she had surgical right open carpal tunnel release and left long finger trigger finger injection without complication. Tr. 11. Michael J. Reyes, M.D., of BJH reported on September 25, 2006, that Plaintiff had right carpal tunnel syndrome post open reduction and internal fixation of distal radius fracture with volar plate; that the plan was to pursue operative intervention, specifically, carpal tunnel release; and that Plaintiff "need[ed] to get her home life situated at [that] time and [wanted] to delay the surgery for a few weeks." Tr. 318. Records of BJH further reflect that Plaintiff had the carpal tunnel release surgery on December 8, 2006; that Plaintiff also had left long finger triggering, for which she was offered surgical treatment; that Plaintiff declined the surgical treatment for the finger triggering and "wished to have this injected"; and that Plaintiff tolerated the procedure well and was in good

11

condition after the surgery. Tr. 292-93.

The ALJ considered that on December 18, 2006, it was reported that Plaintiff's condition improved and that Plaintiff "indicated" that she did not want further treatment. Tr. 11. Notes from BJH of this date state that Plaintiff's wound was well healed; that Plaintiff had "good motor strength"; that Plaintiff was "continuing to trigger, however, she [did] not wish further intervention at [that] time"; that Plaintiff did "not wish to schedule a return appointment ... at [that] time"; and that Plaintiff would "return ... should any additional problems arise." Tr. 247.

The ALJ considered that Plaintiff next sought treatment on August 27, 2008, the day after her scheduled hearing; that, on that date, Plaintiff sought treatment for complaints of a burning sensation in her right wrist; that examination showed no motor or sensory deficits; and that Plaintiff was diagnosed with carpal tunnel syndrome and prescribed Naproxen. Tr. 11. Records from BJH Emergency Department of this date reflect that Plaintiff was alert and oriented; that her speech was clear; that Plaintiff complained of pain to her left hand and fingers; and that Plaintiff said that the pain was "tolerable and doesn't need to be put on a pain pill"; and that Plaintiff had "no other complaints." Tr. 232.

Plaintiff underwent a left carpal tunnel release and left long trigger finger release on October 3, 2008.[1] Tr. 380-81. Progress Notes from the Hopewell Center, dated October 9, 2008, state that Plaintiff complained of depression due to her situation; that she had been unable to work; that Plaintiff said she was staying in bed all day; that she had insomnia and watched television; that Plaintiff said she had no income; and that the assessment was that Plaintiff had depressive disorder not otherwise

---

[1] Records of Plaintiff's post-hearing treatment were submitted to the Appeals Council.

specified and that she had a GAF of 55.[2]

A Surgical Specialty Clinic Report from BJH, dated October 13, 2008, states that Plaintiff was ten days status - post left carpal tunnel release and long trigger finger release; that her stitches were removed on that date and she was to "start range of motion at home"; that she was prescribed Darvocet; that "no more narcotics" were to be prescribed "from this clinic after this"; and that Plaintiff was to follow-up in one month for range of motion. Tr. 351. A Surgical Specialty Clinic Report from BJH, dated November 17, 2008, states that, on examination, Plaintiff was in "no acute distress"; that Plaintiff's incisions were well healed; that her sensation was intact to light touch; that Plaintiff "lack[ed] hyperextension at the long finger metacarpophalangeal joint"; that her "abductor pollicis brevis and opponens strength [was] 5/5"; that Plaintiff was prescribed Vicodin; and that Plaintiff "understands that this will be her last narcotics prescription." Tr. 345. Records from BJH, dated December 8, 2008, reflect that Plaintiff was in no acute distress; that her incisions were well healed; that her sensation was intact; that Plaintiff said that "she [was] only concerned about the swelling"; that Plaintiff was told that it sometimes takes awhile for the swelling to decrease; that Plaintiff should continue warm soaks and Naproxen; that Plaintiff said that "sometimes her fingers [were] stiff in the morning"; that range of motion exercises should help with the stiffness; that Plaintiff said she also "occasionally felt some clicking in her left long finger but no catching"; that range of

---

[2] Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32.

motion should help this; and that "overall, [Plaintiff] [was] happy with her surgeries." Tr. 406.

On October 9, 2008, Plaintiff sought mental health treatment at the Hopewell Center. Records reflect that Plaintiff said that she was depressed due to her situation, which included having to move back with her mother and being unable to work since September 2008; that Plaintiff had completed two years of college; that Plaintiff appeared age appropriate; that she was "nicely groomed"; that Plaintiff's left arm was in a sling, which she said was "support for minor surgery"; that Plaintiff's speech was clear and had a normal rate and rhythm; that Plaintiff said she had insomnia and stayed in bed often; that Plaintiff's memory was "excellent" in regard to recall of recent and remote events; that her fund of knowledge was adequate; that her insight was good; that Plaintiff had depressive disorder not otherwise specified; and that she had a current GAF of 55. Tr. 396-403.

Patrick Oruwari, M.D., a psychiatrist, conducted a psychiatric evaluation of Plaintiff on February 6, 2009. Dr. Oruwari reported that Plaintiff was depressed; that she stopped working in October 2008; that Plaintiff was frustrated that she was dependent on her mother; that Plaintiff said she had good energy and "no life"; that Plaintiff was anxious and fidgety; that her hygiene was "sometimes irritable"; that her insight and judgment were "good"; that Plaintiff said she ate too much and was gaining weight; that Plaintiff denied having hallucinations or delusions; that her affect and mood were depressed; that Dr. Oruwari's diagnosis of Plaintiff was adjustment disorder with depressed and anxious mood; and that Dr. Oruwari assigned Plaintiff a GAF of 48. Tr. 390-93.

Upon determining Plaintiff's RFC, the ALJ considered that Plaintiff did not have medical treatment for the twenty months prior to the administrative hearing. The court notes that seeking limited medical treatment is inconsistent with claims of disabling pain. Moreover, Plaintiff's failure to seek medical treatment for this long period, during which she claimed she was disabled, suggests

14

that she did not have disabling pain. See Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."); Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). In some circumstances, failure to seek medical treatment based on inadequate financial resources may explain a plaintiff's failure. See Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989). In the matter under consideration, however, when the ALJ asked Plaintiff why she had not sought medical treatment since she regained Medicaid eligibility, she replied that she did not know why.[3] Tr. 41. Plaintiff's failure to seek treatment offered to indigents detracts from her claim that she is disabled. See Riggins, 177 F.3d at 693.

Upon determining Plaintiff's RFC, the ALJ considered that although Plaintiff claimed, at the hearing, that she suffered from depression, Plaintiff never required psychiatric intervention at an emergency room or inpatient hospitalization for depression. The ALJ also considered that Plaintiff never sought any mental health treatment and that there was no objective evidence of any determinable diagnosed mental impairment. Tr. Indeed, the record does not reflect that Plaintiff received such treatment prior to the administrative hearing. See Edwards, 314 F.3d at 967; Gwathney, 104 F.3d at 1045; Bentley, 52 F.3d at 786; Nelson, 946 F.2d at 1317. While an ALJ may

---

[3]   Plaintiff testified that she lost Medicaid eligibility in early 2007 and that she regained it around August 2007. Tr. 36-37, 41.

15

not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence. See Ramirez v. Barnhart, 292 F.3d 576 (8th Cir. 2002) (citing 20 C.F.R. § § 416.908, 416.929). To the extent that Plaintiff sought mental health treatment after the hearing, the records from Hopewell do not reflect that any testing was conducted; records from Plaintiff's mental health treatment at Hopewell merely reflect her subjective complaints and self reporting. Likewise, Dr. Oruwari's records do not reflect that he conducted tests to reach his diagnosis; rather, he relied on Plaintiff's subjective complaints and self reporting. See Orrick v. Sullivan, 966 F.2d 368, 372 (8th Cir. 1992) (holding that an ALJ may discredit a claimant's subjective complaints where there are inconsistencies in the record; the ALJ may give more weight to the medical records than to a claimant's testimony); Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Sec'y of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987). See also Davidson v. Astrue, 501 F.3d 987, 991 (8th Cir. 2007) (holding that an ALJ can discount opinion evidence based on "an appropriate finding of inconsistency with other evidence"). Significantly, records from Hopewell and from Dr. Oruwari reflect, to the extent Plaintiff had depression, that this depression was situational as it was caused by her dependence on her mother and her not working. See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations). Additionally, the timing of Plaintiff's decision to seek mental health treatment undermines her credibility as it suggests that the primary purpose of her treatment was to obtain disability benefits. See Page v. Astrue, 484 F.3d 1040, 1044 (8th Cir. 2007) (holding that the ALJ properly considered

that the claimant did not assert disability due to a mental impairment on her application; that she claimed to hear and see things at the administrative hearing; and that subsequent to the hearing the claimant self referred for mental health counseling). To the extent Plaintiff argues that the ALJ failed to consider that her depression was linked to or caused by her pain, the record does not support a claim that her depression was caused by pain. Rather, as discussed above, it was reported that her depression was caused by Plaintiff's situation, including her dependence on her mother and her not working. The court finds that substantial evidence on the record supports the ALJ's findings regarding Plaintiff's alleged depression.

Upon determining Plaintiff's RFC, the ALJ considered that there was an absence of any objective evidence of lasting limitations on Plaintiff's range of motion, grip strength, or manipulation and that no doctor imposed functional limitations on Plaintiff. "A treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment." Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001). While Plaintiff's medical records reflect that she made progress after her surgeries, she, nonetheless, underwent surgery for carpal tunnel syndrome. Under such circumstances, Plaintiff's range of motion, grip strength, and ability to manipulate objects, as well as any limitations on her ability to lift are relevant to a determination of Plaintiff's RFC. Plaintiff's medical records did not provide enough information for the ALJ and/or the Appeals Council to make an informed decision. See Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir. 1992); Dosier v. Heckler, 754 F.2d 274, 276 (8th Cir. 1985) (holding that "it is reversible error for an ALJ not to order a consultative exam when such an evaluation is necessary to make an informed decision"). The court

finds, therefore, that crucial issues have been left undeveloped. See Goff, 421 F.3d 785, 791(8th Cir. 2005) (quoting Stormo, 377 F.3d at 806).

The Regulations provide at 20 C.F.R. § 404.1624(c)(3) that "[i]f the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence under the provisions of §§ 404.1512 and 404.1519 through 404.1519h. We will request additional existing records, *recontact your treating sources* or any other examining sources, ask you to *undergo a consultative examination* at our expense, or ask you or others for more information." (emphasis added). Under the circumstances of this case the ALJ should have sought further information from Plaintiff's doctors or obtained a consulting examination. See Tellez v. Barnhart, 403 F.3d 953, 956-57 (8th Cir. 2005) (holding that the ALJ was not required to obtain additional medical opinions where "there [was] no indication that the ALJ felt unable to make the assessment he did and his conclusion [was] supported by substantial evidence"). Because of the incompleteness of the record regarding Plaintiff's range of motion, grip strength, and ability to manipulate and lift, the court finds that the ALJ's conclusion that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole. The court will, therefore, reverse this matter and remand it to the ALJ pursuant to 42 U.S.C. 405(g), sentence 4, so that the record can be fully developed in accordance with this decision.

## IV.
## CONCLUSION

The court finds that this matter should be reversed and remanded to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4. Upon remand, the ALJ is directed to fully develop the record in a manner consistent with this court's opinion. **The**

**court stresses that upon reversing and remanding this matter it does not mean to imply that the Commission should return a finding of "disabled."** The court is merely concerned that the Commissioner's final determination, as it presently stands, is not supported by substantial evidence on the record as a whole.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief which Plaintiff seeks in her Complaint and Brief in Support of Complaint is **GRANTED** in part, and **DENIED**, in part. Docs. 1, 17

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will issue contemporaneously herewith remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4.

**IT IS FURTHER ORDERED** that upon entry of the Judgment, the appeal period will begin which determines the thirty (30) day period in which a timely application for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, may be filed.

<u>/s/Mary Ann L. Medler</u>
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of June, 2010.